IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**CYNTHIA TORRES HARRIS,**

      **Plaintiff,**

vs.                                                                                          **No. CIV 02-1608 RB/LAM**

**CITY OF TRUTH OR CONSEQUENCES,**
**VILLAGE OF WILLIAMSBURG,**
**and COUNTY OF SIERRA, d/b/a**
**Sierra County Regional Dispatch**
**Authority,**

      **Defendants.**

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** came before the Court on Defendants City of Truth or Consequences and Village of Williamsburg's Motion to Dismiss (Doc. 12), filed on March 6, 2003. Jurisdiction arises under 28 U.S.C. § 1331. Having reviewed the submissions of the parties and the relevant law, the Court finds that the motion is not well-taken and should be denied.

**I.**     **Background.**

On October 29, 2000, Ms. Torres Harris filed a charge of national origin discrimination against the City of Truth or Consequences (hereinafter "City") based on a denial of promotion to Director of the Sierra County Regional Dispatch Authority (hereinafter "SCRDA"). (Defs. Ex. A; Compl. ¶ 12.) Ms. Torres Harris charged that Dixie Fischer, an Anglo or non-Hispanic, was less qualified than Ms. Torres Harris for the position, yet Ms. Fischer received the promotion. (Compl.

¶ 14.) On November 15, 2000, Ms. Torres Harris filed an identical charge of national origin discrimination against the SCRDA. (Defs. Ex. B; Compl. ¶ 12.) Ms. Torres Harris received her right to sue letter on her charges of discrimination on February 20, 2001. (Defs. Ex. C.) Ms. Torres Harris did not file suit on her national origin discrimination charges.

Ms. Fisher, as Director of the SCRDA, was Ms. Torres Harris' supervisor. (Compl. ¶ 13.) Ms. Fisher learned of Ms. Torres Harris' charges of discrimination in December 2000 and February 2001. (Compl. ¶ 15.) After learning of Ms. Torres Harris' protected activities, Ms. Fisher allegedly took retaliatory action against Ms. Torres Harris. (Compl. ¶ 16.) The alleged retaliatory actions consisted of demotion, denial of pay increase, issuance of a written warning, change of scheduled work hours, assignment of split days off, removal of job duties and creation of a hostile work environment. (Compl. ¶¶ 17-37.)

On August 10, 2001, Ms. Torres Harris filed a discrimination charge against the SCRDA based on retaliation. (Defs. Ex. D.) Ms. Torres Harris checked the "retaliation" box on the EEOC form and stated that the retaliation took place from February 20, 2001 until August 6, 2001. (*Id.*) Ms. Torres Harris stated that "[e]ver since filing a previous EEOC charge, I have been demoted, denied a pay raise and harassed by my supervisor. I have also had my schedule changed against my will and I am receiving different treatment as a result of filing a previous EEOC complaint. I have also had duties taken away since filing my complaint." (*Id.*) Ms. Torres Harris did not name the City or the Village of Williamsburg (hereinafter "Village") in her August 10, 2001 retaliation charge. (*Id.*)

On April 22, 2002, the EEOC issued a Determination in favor of Ms. Torres Harris on the August 10, 2001 retaliation charge. (Defs. Ex. E.) The Determination named the SCRDA as the respondent, but it did not name the City or the Village. (*Id.*) On July 22, 2002, the EEOC issued an

Amended Determination in favor of Ms. Torres Harris on the August 10, 2001 charge of retaliation, (Defs. Ex. F; Pl. Ex. 5), and an Amended Determination in favor of Ms. Torres Harris on her national origin discrimination charges filed on October 29, 2000 and November 15, 2000. (Pl. Ex. 4.) The Amended Determinations named both the SCRDA and the City, but not the Village, as respondents. (*Id.*)

On December 23, 2002, Ms. Torres Harris filed her Complaint alleging retaliation in violation of Title VII.  Title VII prohibits retaliation against employees for asserting their rights under Title VII, providing that "[i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a) (2003).  Defendants do not presently dispute that Ms. Torres Harris engaged in protected activity under Title VII when she filed a charge of national origin discrimination in September 2000.  *See* 42 U.S.C. § 2000e-2(a)(1)(2003) (barring employment discrimination on the basis of national origin).

On March 6, 2003, the City and Village filed their Motion to Dismiss, arguing that Ms. Torres Harris failed to exhaust administrative remedies as to the City and the Village.

**II. Analysis.**

    **A.  Whether FED.R.CIV.P. 12(b)(1) or FED.R.CIV.P. 56 applies.**

Ms. Torres Harris argues that this Rule 12(b)(1) motion to dismiss should be considered as a motion for summary judgment.  When a party challenges the allegations supporting subject-matter jurisdiction, the "court has wide discretion to allow affidavits, other documents, and a limited

3

evidentiary hearing to resolve disputed jurisdictional facts." *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995). "In such instances, a court's reference to evidence outside the pleadings does not convert the motion [to dismiss] to a Rule 56 motion [for summary judgment]." *Id*. However, when "resolution of the jurisdictional question is intertwined with the merits of the case," it is necessary to "convert a Rule 12(b)(1) motion . . . into a [motion under] Rule 12(b)(6) . . . or . . . Rule 56." *Id.* In analyzing whether jurisdiction is intertwined with the merits of a particular dispute, "the underlying issue is whether resolution of the jurisdictional question requires resolution of an aspect of the substantive claim." *Sizova v. Nat. Inst. of Standards & Tech.*, 282 F.3d 1320, 1324 (10th Cir. 2002).

Resolution of the jurisdictional issue requires resolution of the question of whether Ms. Torres Harris exhausted administrative remedies as to the City and the Village; it does not require resolution of the question of whether Ms. Torres Harris was subjected to retaliation in violation of Title VII. Thus, Rule 12(b)(1) provides the correct standard for resolution of the jurisdictional issue raised by the Motion to Dismiss. *Sizova*, 282 F.3d at 1324.

### B. Standard for FED.R.CIV.P. 12(b)(1).

Upon a challenge to a federal court's jurisdiction under FED.R.CIV.P. 12(b)(1), the court should conduct a careful inquiry and make a conclusive determination whether it has subject matter jurisdiction. 5A WRIGHT, MILLER & KANE CIVIL 2d § 1350 (2002); *Valentin v. Hospital Bella Vista*, 254 F.3d 358, 364-65 (1st Cir. 2001). Where a party challenges the facts upon which subject matter jurisdiction depends pursuant to Rule 12(b)(1), a district court may not presume the truthfulness of the complaint's factual allegations and has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts. *Sizova*, 282 F.3d

at 1324 (*quoting Holt*, 46 F.3d at 1003). Whether subject matter jurisdiction is raised under Rule 12(b)(1) or Rule 56, the plaintiff's burden remains the same; plaintiff must present affidavits or other evidence sufficient to establish the court's subject matter jurisdiction by a preponderance of the evidence. *United States ex rel. Hafter v. Spectrum Emergency Care, Inc.*, 190 F.3d 1156, 1160 n. 5 (10th Cir. 1999).

        **C.**      **Whether the court has subject matter jurisdiction over the City and Village**.

In the Tenth Circuit, exhaustion of administrative remedies is a jurisdictional prerequisite to bringing suit under Title VII. *Seymore v. Shawver & Sons, Inc.*, 111 F.3d 794, 799 (10th Cir. 1997); *Jones v. Runyon*, 91 F.3d 1398, 1399 (10th Cir. 1996). In order to exhaust administrative remedies, the plaintiff must timely file a charge of discrimination with the EEOC. *See* 42 U. S. C. § 2000e-5 (e) and (f)(1). The charge must be in writing, signed, verified and must contain a clear and concise statement of the facts. *See* 29 C. F. R. §§ 1601.9; 1601.12 (3). The purposes of the exhaustion requirement are to provide notice of the alleged violation to the charged party and to provide the EEOC with the opportunity to conciliate the claim. *Seymore*, 111 F.3d at 799. When determining exhaustion, the Court must liberally construe the EEOC charge. *Gonzalez-Aller Balseyro v. GTE Lenkurt, Inc.*, 702 F.2d 857, 859 (10th Cir. 1983); *Harrell v. Spangler, Inc.*, 957 F. Supp. 1215, 1219 (D. Kan. 1997).

In her retaliation charge filed on August 10, 2001, Ms. Torres Harris identified the SCRDA as the employer who retaliated against her. (Defs. Ex. D.) Neither the City nor the Village were named in the charge. Generally, "only parties previously identified as respondents in charges filed with the EEOC are subject to subsequent liability under Title VII." *Terrell v. United States Pipe & Foundry Co.*, 644 F.2d 1112, 1122 (5th Cir. 1981), *vacated on other grounds*, 456 U.S. 955 (1982).

However, Courts have recognized a narrow exception to this general rule where there is sufficient identity of interest between the respondent and the defendant to satisfy the intention of Title VII that the defendant have notice of the charge and the EEOC have an opportunity to attempt conciliation. *Romero v. Union Pac. R.R.*, 615 F.2d 1303, 1311 (10th Cir. 1980) (*citing Glus v. G. C. Murphy Co.*, 562 F.2d 880 (3d Cir. 1977)); *Ortiz v. Wingard*, 173 F.Supp.2d 1155, 1160 (D. N.M. 2001). Under such circumstances, omission of a party's name from the EEOC charge does not automatically mandate dismissal of a subsequent action under Title VII. *Romero*, 615 F.2d. at 1311.

Four factors are pertinent to an evaluation of the failure to name a party in the EEOC charge: (1) whether the role of the unnamed party could through reasonable effort by the complainant be ascertained at the time of the filing of the EEOC complaint; (2) whether, under the circumstances, the interests of a named party are so similar as the unnamed party's that for the purpose of obtaining voluntary conciliation and compliance it would be unnecessary to include the unnamed party in the EEOC proceedings; (3) whether its absence from the EEOC proceedings resulted in actual prejudice to the interests of the unnamed party; (4) whether the unnamed party has in some way represented to the complainant that its relationship with the complainant is to be through the named party. *Romero*, 615 F.2d. at 1312.

The parties failed to address the *Romero* factors in their briefs. However, they have submitted evidence relevant to the analysis. The City and the Village presented the administrative charges, determination, amended determination, the affidavit of attorney Jay Rubin and the Joint Powers Agreement. The Joint Powers Agreement states that the SCRDA is a governmental entity separate from the City and the Village. (Defs. Exs. A ¶¶ 4-5; A1 § 1.1). The SCRDA has its own employees, its own budget and its own director. (Defs. Ex. A1 §§ 3.1; 4.1; 5.2; 5.3.) The SCRDA Director is

charged with its day-to-day operations, including hiring, firing, disciplining and training personnel. (Defs. Exs. A ¶¶ 4-5; A1 § 3.1.)

In his affidavit, Mr. Rubin states that he represented the SCRDA, and not the City, in the administrative proceedings and that he had no reason to believe that the EEOC investigation included the City. (Defs. Ex. A ¶13). The EEOC did not request documents from the City in response to the national origin discrimination charge. (*Id.*) If the national origin discrimination charge had indicated that the City was a respondent, Mr. Rubin would have notified the City Manager and the City's insurance carrier of potential exposure. (*Id.*) Additionally, Mr. Rubin would have realized that he had a potential conflict of interest and may have moved to withdraw. (Defs. Ex. A ¶¶ 13-16).

In opposition to the motion to dismiss, and in support of subject matter jurisdiction, Ms. Torres Harris presented her own affidavit, the affidavits of Evelyn Renfro[1] and Sandra Woolf, the amended determinations, correspondence from the EEOC, an opinion issued by Judge Black and the affidavit of Plaintiff's counsel, Dennis Montoya. Ms. Torres Harris avers that her pay stubs bear the City's name, that the City Manager signed paper work and made disciplinary decisions for SCRDA employees, that she was given credit for earlier City service, and that the SCRDA applies City personnel policies. (Pl. Exs. 1 and 2.) Ms. Renfro was a long time City employee who served as Acting City Manager and City Manager during the final four years of her employment. (Pl. Ex. 2.) Ms. Renfro states that SCRDA employees were on the City payroll, received City benefits, the City manager approved time sheets for SCRDA employees, personnel files for SCRDA employees are

---

[1] The City takes issue with the Renfro Affidavit because Ms. Renfro was a City managerial employee and she was not authorized to speak with Plaintiff's counsel about the case. The Renfro Affidavit is not material to what transpired in 2001 because she retired from City employment on February 12, 1999. (Pl. Ex. 2. ) The opinion and the Montoya Affidavit are also immaterial because they have no bearing on whether Torres Harris exhausted administrative remedies as to the City and the Village.

maintained by the City, and SCRDA employees may transfer to City positions. (*Id.*) Ms. Woolf avers that she transferred in-house from her employment at the City swimming pool to the SCRDA, that she did not need to give notice, and that the City Manager told her that she could not be paid overtime for holding both jobs. (Pl. Ex. 32.)

The amended determinations list the City and the SCRDA as respondents. (Pl. Ex. 3-4.) A February 26, 2002 letter from the EEOC addresses Mr. Rubin as attorney for the City. (Pl. Ex. 6.) A November 13, 2000, letter from the EEOC to Ms. Torres Harris informs her that Mr. Rubin had notified the EEOC that it was not her employer. (Pl. Ex. 7.) The opinion addresses the issue of whether Bernalillo County was the plaintiff's employer; it does not address exhaustion of administrative remedies within the meaning of Title VII. (Pl. Ex. 8.) In his affidavit, Mr. Montoya states that discovery is necessary to establish that the City, the Village and the County of Sierra were involved in the management of Ms. Torres Harris' employment, the degree these entities were involved in the EEOC proceedings and the operations of the SCRDA. (Pl. Ex. 9.)

The first *Romero* factor asks whether the role of the unnamed party could through reasonable effort by the complainant be ascertained at the time of the filing of the EEOC complaint. This factor balances in favor of the City and the Village. Ms. Torres Harris could have ascertained the role of the City and Village at the time she filed her August 10, 2001 charge. She has failed to establish the first *Romero* factor.

The second *Romero* factor also militates in favor of the City and the Village. The Joint Powers Agreement provides that the interests of the SCRDA are separate from those of the Village and the City. The fact that Mr. Rubin served as attorney for both the City and the SCRDA does not negate the fact that they were separate entities. Inclusion of the City and the Village in the EEOC

proceedings was necessary to obtain their voluntary conciliation and compliance. Ms. Torres Harris failed to satisfy the first and second *Romero* factors.

The third *Romero* factor asks whether the unnamed party's absence from the EEOC proceedings resulted in actual prejudice to the interests of the unnamed party. The Rubin Affidavit indicates that the City would have taken a different course of action if it had been included in the EEOC process. The Village did not participate in the EEOC proceedings, and was not named in the charges or the amended determinations. Under these circumstances, the record is insufficient to determine whether the City and the Village were actually prejudiced.

The final *Romero* factor is whether the unnamed party has in some way represented to the complainant that its relationship with the complainant is to be through the named party. Plaintiff was informed that the City was not her employer and she amended her national origin discrimination charge to name the SCRDA. The City did not represent to Ms. Torres Harris that its relationship with her was to be through the SCRDA. The record contains no information as to whether the Village represented to Ms. Torres Harris that its relationship with her was to be through the SCRDA. Ms. Torres Harris failed to satisfy the fourth *Romero* factor.

### III.   Conclusion

Ms. Torres Harris had the burden of presenting affidavits or other evidence sufficient to establish the court's subject matter jurisdiction by a preponderance of the evidence. *Sizova*, 282 F.3d at 1324; *Spectrum Emergency Care, Inc.*, 190 F.3d at 1160. This she has failed to do. However, *Romero* counsels that the court should determine subject matter jurisdiction after each side has had an opportunity to fully address the question. *Id.*, 615 F.3d at 1312. Both parties failed to address

*Romero* in their briefs and the record does not satisfy the requirements of *Romero*. However, considering that Ms. Torres Harris is entitled to liberal construction of her EEOC charge to accomplish the remedial purpose of Title VII, *Gonzalez-Aller Balseyro*, 702 F.2d at 859- 60, I will under these circumstances, deny the motion to dismiss. The City and Village may renew their motion. Any such renewal should address the *Romero* factors.

**WHEREFORE,**

    **IT IS ORDERED** that the Defendants City of Truth or Consequences and Village of Williamsburg's Motion to Dismiss (Doc. 12), filed on March 6, 2003, is **DENIED.**

 

_____
**ROBERT C. BRACK**
**UNITED STATES DISTRICT JUDGE**